Matter of Orozco v City of New York (2021 NY Slip Op 07066)





Matter of Orozco v City of New York


2021 NY Slip Op 07066


Decided on December 16, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 16, 2021

Before: Manzanet-Daniels, J.P., Mazzarelli, Moulton, González, Pitt, JJ. 


Index No. 155631/20 Appeal No. 14325 Case No. 2021-01347 

[*1]In the Matter of Adan Orozco, Petitioner-Respondent,
v
The City of New York, Respondent-Appellant.


James E. Johnson, Corporation Counsel, New York (Elina Drucker of counsel), for appellant.
Sim & Depaola, LLP, Bayside (Sang J. Sim of counsel), for respondent.



Order, Supreme Court, New York County (Dakota D. Ramseur, J.), entered October 16, 2020, which granted petitioner Adan Orozco's petition for leave to file a late notice of claim for false arrest, false imprisonment, and malicious prosecution, affirmed, without costs.
Petitioner was arrested for a narcotics-related offense on August 13, 2018 in the vicinity of 19 Elizabeth Street by NYPD officers with personnel from the Special Narcotics Prosecutor for the City of New York present. Petitioner asserts that he was arrested based on what he claims was a fraudulently-procured warrant by respondent's police officers. After being in police custody over the course of five months, petitioner was released upon the favorable termination of the criminal proceedings against him, and all adverse charges were unconditionally dismissed on December 24, 2018.
Petitioner filed the underlying petition seeking leave to file a late notice of claim on July 23, 2020. The notice of claim provides that petitioner was falsely arrested, falsely imprisoned, and maliciously prosecuted by the police and the district attorney's office. Petitioner's claims are predicated on the allegedly intentional and unlawful acts of respondent's employees. Plaintiff alleges that respondent's officers perpetrated the subject arrest and initiated the subject criminal prosecution despite lacking the requisite probable cause. Petitioner sought leave to file a late notice of claim within the statute of limitations.
Pursuant to General Municipal Law § 50-e(1)(a), a tort action against
a municipality must be commenced by service of a notice of claim upon the
municipality within 90 days of the date on which the claim arose. When considering an application for leave to file a late notice of claim, the court should consider a number of factors, including: (i) the reasonableness of the excuse offered for the delay in filing the notice of claim; (ii) whether the municipality obtained actual knowledge of the essential facts constituting the claim within the 90-day as-of right filing period or within a reasonable time thereafter; and (iii) whether the municipality was prejudiced because the claimant did not file during the as-of-right period (General Municipal Law §50-e[5]).
The statute providing for a late notice of claim is remedial in nature and should be liberally construed (see Matter of Porcaro v City of New York, 20 AD3d 357, 357 [1st Dept 2005]). "The statute [] is not intended to operate as a device to frustrate the rights of individuals with legitimate claims" (id. at 358).
Respondent is deemed to have actual notice of the claim by virtue of the fact that its employees participated and were directly involved in the conduct giving rising to petitioner's claims and are in possession of records and documents relating to the incident (see Matter of Mitchell v City of New York, 134 AD3d 941 [2d Dept 2015]; see also N.F. v City of New York, 161 AD3d 1046 [1st Dept 2018]; Lawton v Town of Orchard [*2]Park, 138 AD3d 1428 [4th Dept 2016]). Respondent's agents procured the allegedly false warrant upon attestations as to probable cause, executed the allegedly false arrest, and generated the reports pertaining thereto; the prosecutor would have had access to those same records and examined same in connection with preparing its opposition to defendant's motions and in preparing more generally for trial. Indeed, personnel from the special narcotics prosecutor were present during the arrest. Under these circumstances, "knowledge of the essential facts constituting the claims within the statutory period can be imputed to the City" (Grullon v City of New York, 222 AD2d 257, 258 [1st Dept 1995]; see e.g. Erichson v City of Poughkeepsie Police Dept., 66 AD3d 820 [2d Dept 2009] [the city acquired actual knowledge of assault claim where employees of police department engaged in conduct alleged to give rise to the claims]; Matter of Ansong v City of New York, 308 AD2d 333 [1st Dept 2003] [knowledge imputed to the city where the officers who arrested the plaintiff had immediate knowledge of the events in question]). "Where, as here, the claim is for false imprisonment and malicious prosecution, such knowledge may be imputed to the municipality through the officers in its employ who made the arrest or initiated the prosecution" (Justiniano v New York City Hous. Auth. Police, 191 AD2d 252, 253 [1st Dept 1993]; see also Nunez v City of New York, 307 AD2d 218 [1st Dept 2003] [in case alleging false arrest, unlawful imprisonment, and malicious prosecution, facts regarding the petitioner's arrest and incarceration were in the possession of the respondent police department such that knowledge was imputed to the City]; Diallo v City of New York, 224 AD2d 339 [1st Dept 1996] [police acquired actual knowledge of malicious prosecution claim since any investigation of incident at the precinct would have necessarily revealed prosecution and final disposition of criminal charges]; Tatum v City of New York, 161 AD2d 580 [2d Dept 1990] [police arrest report and District Attorney's investigation that culminated in adjournment in contemplation of dismissal constituted actual and constructive notice to the defendant in case alleging false imprisonment and malicious prosecution]).[FN1]
Employees and agents of the NYPD procured the warrant upon allegedly false attestations as to probable cause. Employees and agents of NYPD and the prosecutor's office, including the officers who participated in petitioner's arrest, were present at the scene of the incident and perpetrated the allegedly unlawful actions that now form the basis for petitioner's state law claims.
Pursuant to investigatory procedures, the officers, agents, assistant district attorneys, and investigators who were involved in petitioner's arrest, detention, and prosecution were required to contemporaneously record factual details, including those related to any probable cause determination, so that the District Attorney's [*3]Office might properly evaluate the merits of a potential criminal prosecution and draft an accusatory instrument. Those very same probable cause determinations made by respondent's agents are those directly challenged by petitioner's false arrest and malicious prosecution action. Those very same attestations of probable cause by respondent's agents resulted in the issuance of the warrant executed by respondent's agents and the arrest of petitioner by respondent's agents, based on those same attestations of probable cause. Petitioner made numerous motions during his five-month incarceration, including ones directed to the sufficiency of the probable cause allegations supporting his arrest. The District Attorney's investigation would have entailed evaluating the claims of those very agents of respondent who had sworn out the warrant and effectuated the arrest. Thus, from the moment respondent's agents obtained the warrant through and the time the case was dismissed, respondent was on notice and may be presumed to have actual knowledge of petitioner's claims.
Respondent should be precluded from arguing that it did not acquire actual notice when it is an irrefutable fact that its agents perpetrated the arrest and initiated the prosecution. Respondent's actual knowledge may be presumed by the very nature of the action and the allegations.
"Where, as here, members of the municipality's police department participate in the acts giving rise to the claim, and reports and complaints have been filed by the police, the municipality will be held to have actual notice of the essential facts of the claim" (Matter of Ragland v New York City Hous. Auth., 201 AD2d 7, 11 [2d Dept 1994] [emphasis omitted]). As the Ragland Court explained, "the existence of reports in its own files concerning those facts and circumstances [giving rise to a claim] is the functional equivalent of an investigation" (id.). Respondent's assertion that it lacked knowledge of petitioner's claims rings hollow: If respondent had no knowledge of the facts and circumstances underlying petitioner's arrest and detention, why then were they holding him in jail? While the mere existence of a report under certain circumstances might be insufficient to impute actual knowledge, here those reports were generated by those very persons who engaged in execution of the allegedly false arrest warrant and whose conduct forms the basis of petitioner's suit. To the extent Matter of Singleton v City of New York (198 AD3d 498 [1st Dept 2021]) differs, we decline to follow it. If we are to depart from settled principle, we should do so explicitly and not on the basis of a one-paragraph memorandum opinion that does not cite or discuss the relevant precedent let alone express an intent to overrule it. Moreover, the cases on which Singleton relied involved not false arrests, but unrelated negligence claims against other entitles where it was not clear that police reports furnished adequate notice (see Matter of [*4]Rivera v New York City Hous. Auth., 25 AD3d 450 [1st Dept 2006] [police report of criminal assault did not contain sufficient facts to apprise the defendants of the plaintiff's intention to file a civil suit based on a claim of negligent premises security]; Olivera v City of New York, 270 AD2d 5 [1st Dept 2000] [police report regarding a motor vehicle collision did not apprise of the nature or severity of the plaintiff's personal injuries]; Walker v New York City Tr. Auth., 266 AD2d 54 [1st Dept 1999] [police "aided" report did not connect the occurrence with any negligence on the part of the respondent transit authority]). Matter of Figueroa v City of New York (195 AD3d 467 [1st Dept 2021]) is inapposite as it involved allegations of negligence and medical malpractice and not claims of false arrest and malicious prosecution.[FN2]
In light of respondent's knowledge of petitioner's claims, no prejudice would result if petitioner were permitted to file a late notice of claim (see Erichson v City of Poughkeepsie Police Dept., 66 AD3d 820 [2d Dept 2009]). Once there has been an initial showing regarding the lack of substantial prejudice toward the public corporation or municipality, the public corporation or municipality is required to make a "particularized or persuasive showing that the delay caused them substantial prejudice" (Lawton v Town of Orchard Park, 138 AD3d 1428, 1428 [4th Dept 2016]). The Court of Appeals has cautioned that a determination that a municipality is substantially prejudiced by a late notice of claim cannot be based on speculation or inference, but must be founded on record evidence (see Matter of Newcomb v Middle Country Cent. Sch. Dist., 28 NY3d 455, 466 [2016]). Respondent has failed to make any such showing.
It is notable that petitioner's 42 USC § 1983 claims are still viable, as those claims are not subject to New York State's notice of claim requirement. Accordingly, the individual officers and the City of New York cannot be prejudiced, as they will be compelled to defend the federal claims nonetheless.
The sealing of the criminal charges upon dismissal should not result in prejudice so long as petitioner provides the necessary consents and authorizations required by CPL 160.50(1)(d) (see Ragland, 201 AD2d at 7, 13-14).
While petitioner's excuse that he was preoccupied defending against the unfounded charges and delayed in asserting his rights owing to the pandemic is debatable, the excuse was sufficient under the circumstances and in any event did not overcome the other factors that militated in favor of granting the motion.
All concur except Moulton, J. who dissents in a memorandum as follows:




MOULTON, J. (dissenting)
 

I respectfully dissent. As a statutory precondition to bringing a tort claim against the City, a claimant must serve a notice of claim within 90 days after the claim arises (see General Municipal Law § 50-e [1] [a]). A timely notice of claim facilitates an early investigation allowing the [*5]City to "decide whether the case is one for settlement or litigation" (Rosenbaum v City of New York, 8 NY3d 1, 11 [2006]). A claimant, such as petitioner, who misses the 90-day deadline may seek leave from Supreme Court to serve a late notice of claim up until the expiration of the year-and-90-day limitations period (see General Municipal Law § 50-e [5]). In determining whether to grant leave, a court must consider all relevant circumstances, including whether petitioner offered a reasonable excuse for the delay, whether respondents had actual notice of the essential facts constituting the claim within 90 days after the claim arose or "within a reasonable time thereafter," and prejudice to defendant, if any, caused by the delay (General Municipal Law § 50-e; see Matter of McLeod v Department of Sanitation, 183 AD3d 548 [1st Dept 2020]).
Petitioner failed to carry his burden on any of the applicable statutory factors.
"Actual knowledge of the essential facts is an important factor in determining whether to grant an extension and should be accorded great weight" (Plaza v New York Health & Hosps. Corp. [Jacobi Med. Ctr.], 97 AD3d 466, 468 [1st Dept 2012]; see also Matter of Ruiz v City of New York, 154 AD3d 945, 946 [2d Dept 2017]). The majority assumes, based on the presence of employees and agents of the NYPD at the time of petitioner's arrest and the existence of investigatory procedures and record-keeping, that actual knowledge of the circumstances constituting petitioner's claims for false arrest, false imprisonment, and malicious prosecution can be imputed to respondent. However, this assumption is unsubstantiated by the record presented on appeal.
Petitioner did not submit his own affidavit, or the affidavit of anyone else with personal knowledge, or any documentary evidence in support of his argument that respondent had actual knowledge. "Actual knowledge of the circumstances constituting petitioner's claims may not be imputed to [the City] based solely on the ground that its employees arrested him" (Matter of Singleton v City of New York, 198 AD3d 498, 499 [1st Dept 2021]; Matter of Islam v City of New York, 164 AD3d 672, 674 [2d Dept 2018]). The mere alleged existence of police reports and other records arising from an investigation, without evidence of their content, is insufficient to impute actual knowledge to respondent within the 90-day period following the accrual of petitioner's claims or a reasonable time thereafter (see Matter of Figueroa v City of New York, 195 AD3d 467, 468 [1st Dept 2021]; Matter of Ruiz, 154 AD3d 945, 946; Matter of Fethallah v New York City Police Dept., 150 AD3d at 998, 1000 [2d Dept 2017]; Matter of Hamilton v City of New York, 145 AD3d 784, 785 [2d Dept 2016]; Matter of Rivera v City of New York, 88 AD3d 1004, 1005 [2d Dept 2011]).
The precedent cited by the majority either shows that there was some evidence before the court concerning an investigation or complaint giving actual notice (see Matter of [*6]Mitchell v City of New York, 134 AD3d 941 [1st Dept 2015] [the claimant filed a domestic incident report soon after unjustified arrest instigated by the father of her child, an NYPD officer]; Diallo v City of New York, 224 AD2d 339 [1st Dept 1996] [the claimant's initial timely notice of claim gave notice of facts giving rise to additional malicious prosecution claim]); Grullon v City of New York, 222 AD2d 257 [1st Dept 1995][court acknowledges "extensive investigation in which the District Attorney's office joined"]) or does not state what evidence petitioner placed before the court to show actual notice (Lawton v Town of Orchard Park, 138 AD3d 1428 [4th Dept 2016]; Erichson v City of Poughkeepsie Police Dept., 66 AD3d 820 [2d Dept 2009]; Matter of Ansong v City of New York, 308 AD2d 333 [1st Dept 2003]; Matter of Ragland v New York City Hous. Auth., 201 AD2d 7 [2d Dept 1994]; Justiano v New York City Hous. Auth. Police, 191 AD2d 252 [1st Dept 1993]; Tatum v City of New York, 161 AD2d 580 [2d Dept 1990]). Here, we know the quantum of competent evidence offered by petitioner: zero. The petition is verified by his attorney and lacks any facts tending to support its conclusory allegations. 
Petitioner failed to meet his initial burden of showing that there was no prejudice to respondent as a result of his delay. Petitioner's claims accrued on December 24, 2018 at the time of his release from custody and when the charges against him were dropped. A timely notice of claim should have been filed no later than March 24, 2019. General Municipal Law § 50-e permits claimants to serve a late notice of claim within one year and 90 days of the date of accrual, which in the instant matter would have been March 23, 2020, three days after an executive order went into effect extending the filing deadline for a notice of claim. Petitioner finally moved for leave to file a late notice of claim on July 23, 2020, 19 months from the date of accrual. Petitioner makes no effort to engage with the potential prejudice to respondent caused by this lengthy elapse of time. Accordingly, pursuant to General Municipal Law § 50-e, petitioner did not carry his initial burden of demonstrating that respondent was not substantially prejudiced by his delay in filing a notice of claim (see Matter of Newcomb v Middle Country Cent. Sch. Dist., 28 NY3d 455, 466 [2016]).
Finally, petitioner's excuses for his delay in filing a notice of claim are unavailing. Petitioner argues that he was unable to file a timely notice of claim because he was in custody and focused on defending his innocence. As noted above, petitioner's claims did not begin to accrue until December 24, 2018, when he was released from custody and the charges against him were dropped. Therefore, petitioner was not in custody or defending his innocence between December 24, 2018 and March 24, 2019, the filing period, and has not provided any reasonable excuse for why he was unable to file a timely notice of claim. Petitioner [*7]also asks us to consider the COVID-19 pandemic as a reasonable excuse for his delayed filing. However, the pandemic began in March 2020, a year after the 90-day deadline.
For the foregoing reasons, I respectfully disagree with the majority. Supreme Court's order granting petitioner's motion to file a late notice of claim should be reversed. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 16, 2021



Footnotes

Footnote 1: Matter of Bermudez v City of New York (167 AD3d 733 [2d Dept 2018]), relied on by respondent, is entirely distinguishable inasmuch as the question posed there was whether the City acquired notice of an accident on a sidewalk merely because it had knowledge of certain sidewalk defects.

Footnote 2: We are not bound, of course, by rulings of the Second Department cited by our dissenting colleague. The Second Department's precedent on this issue has been inconsistent.